# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

————————————

Nº 02-20137
Summary Calendar

————————————

IN THE MATTER OF:

EQUALNET COMMUNICATIONS CORPORATION;
ERUDITE COMMUNICATIONS, INC.,
FORMERLY KNOWN AS EQUALNET CORPORATION;
RIDENT COMMUNICATIONS, INC.,
FORMERLY KNOWN AS USC TELECOM, INC.,

Debtors.

RFC CAPITAL CORPORATION,

Appellee,

VERSUS

EQUALNET COMMUNICATIONS CORPORATION;
ERUDITE COMMUNICATIONS, INC.,
FORMERLY KNOWN AS EQUALNET CORPORATION;
RIDENT COMMUNICATIONS, INC.,
FORMERLY KNOWN AS USC TELECOM, INC.,

Appellants.

Appeal from the United States District Court
for the Southern District of Texas
№ H-01-2024

September 30, 2002

Before HIGGINBOTHAM, SMITH, and
  CLEMENT, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Equalnet Communications, Erudite Communications, and Rident Communications ("debtors") appeal an order of the district court reversing three orders of the bankruptcy court that had required RFC Capital Corporation ("RFC") to extend debtor-in-possession financing without any security or administrative priority. Agreeing with the district court that RFC never agreed to such an obligation, we affirm.

### I.

RFC served as a primary lender to the debtors before and after they filed a bankruptcy petition in August 2000. When the debtors filed the petition, RFC had a secured claim against them for $7,655,173.[1] After the petition was filed, the debtors could not obtain unsecured credit for their ordinary operating expenses under 11 U.S.C. § 364(a). In four debtor-in-possession financing orders ("DIP orders"), the bankruptcy court therefore authorized additional credit from RFC to the debtors and gave RFC administrative priority under 11 U.S.C. § 364(c)(1).

In March 2001, the bankruptcy court entered a sale order authorizing the debtors to sell their assets to CCC Globalcom Corp., Inc. ("CCCG"), for $500,000 in cash and the assumption of RFC's pre-petition secured claim. The sale order stated that RFC's claims over $7.5 million would be treated as unsecured claims. In three subsequent funding orders, the bankruptcy court ordered RFC to extend post-petition credit to the debtors and, more importantly, held that the sale order overrode the DIP orders and stripped these post-petition loans of their administrative priority status, thereby making them general unsecured loans.

RFC appealed to the district court, which reversed the funding orders. In a short opinion, the district court concluded that the bankruptcy court had misinterpreted the plain language of the sale order. The district court held that the section of the sale order limiting RFC's secured claims to $7.5 million referred only to RFC's pre-petition loans, not its post-

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] The debtors' unsecured creditors committees disputed the amount of this claim and filed an adversary proceeding in the bankruptcy court against RFC.

petition loans. The district court therefore reinstated the administrative priority for these post-petition loans. The debtors appeal this ruling.[2]

## II.

The parties agree on the basic standard of review for a bankruptcy appeal. "The court reviews the findings of fact by the bankruptcy court under the clearly erroneous standard and decides issues of law de novo." *Haber Oil Co. v. Swinehart* (*In re Haber Oil Co.*), 12 F.3d 426, 434 (5th Cir. 1994).

The parties disagree, though, on whether and to what degree we should defer to the bankruptcy court's interpretation of its own orders. RFC contends that we should review the bankruptcy court's interpretation wholly *de novo* without any deference. The debtors think we should defer to the bankruptcy court's interpretation of its orders.

We stated the "proper reconciliation of these two positions" in *New Nat'l Gypsum Co. v. Nat'l Gypsum Co. Settlement Trust* (*In re Nat'l Gypsum Co.*), 219 F.3d 478, 484 (5th

Cir. 2000). "[W]e should review *de novo* the purely legal issues . . . but should defer to the bankruptcy court's reasonable resolution of any ambiguities in the [orders]." *Id.* At the same time, we explained that textual interpretation of a court order is ultimately a legal question, so the order "must be truly ambiguous . . . before we will defer." *Id.*

As we explain below, the sale order is not ambiguous, and "we will not defer to the bankruptcy court's interpretation of this unambiguous text." *Id.* at 489. We therefore review the sale order and related documents *de novo*.

## III.

The sale order is a consent order that we review according to ordinary principles of contractual interpretation. *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 236 (1975); *Eaton v. Courtaulds of N. Am., Inc.*, 578 F.2d 87, 90 (5th Cir. 1978). "Even in bankruptcy proceedings, the courts of appeals look to state law to decide contractual issues." *River Prod. Co. v. Webb* (*In re Topco, Inc.*), 894 F.2d 727, 738 (5th Cir. 1990).

Texas contract law provides the guiding interpretive principles for this case. Most importantly, "[i]n the interpretation of contracts the primary concern of the courts is to ascertain and to give effect to the intentions of the parties as expressed in the instrument." *R&P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980). Moreover, "[t]his court is bound to read all parts of the contract together to ascertain the agreement of the parties.

The contract must be considered as a whole." *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). If the contract

---

[2] The debtors contend that the district court lacked jurisdiction over RFC's appeal because RFC did not file the appeal within ten days of the entry of judgment. *See* FED. R. BANKR. P. 8002. Although RFC filed a notice of appeal within ten days of each of the three funding orders, the debtors argue that RFC really appeals the sale order, not the funding orders.

This argument is unpersuasive. RFC had no reason to think that it would be required to lend to the debtors on an unsecured basis without administrative priority until the bankruptcy court entered the funding orders. RFC therefore timely appealed, and the district court properly exercised jurisdiction over that appeal.

3

incorporates other documents by reference, we must examine those documents, as well, to ascertain the parties' intent. *Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968). Finally, a contract contains an ambiguity only when its terms are objectively ambiguous, not simply because the parties offer differing interpretations. *Forbau*, 876 S.W.2d at 134.

With these principles in mind, we conclude that the sale order is unambiguous and does not strip RFC's post-petition loans of administrative priority status. The bankruptcy court relied on paragraph 25 of the sale order to conclude that the sale order overrode the DIP orders and reduced RFC's post-petition loans to general unsecured status. Paragraph 25 states in pertinent part that "[t]o the extent that RFC asserts that its claim against the Debtors is in excess of $7.5 million, RFC shall be permitted to assert a deficiency claim against the Debtors equal to the amount of its alleged claim less $7.5 million ('the RFC Deficiency Claim'). The RFC Deficiency Claim, if allowed, shall only be allowed as a general unsecured claim."

Paragraph 25 admittedly seems to limit RFC to a secured claim of $7.5 million, but the bankruptcy court failed to interpret paragraph 25 in the context of the contract as a whole. In this context, paragraph 25 limits only RFC's *pre-petition* secured claim, not its *post-petition* administrative priority claim.

Uncertainty over the amount of RFC's pre-petition claim threatened the sale of the debtors' assets to CCCG. The unsecured creditors committees had filed an adversary proceeding to challenge the amount of RFC's pre-petition secured claim. The parties set aside the dispute for the sake of consummating the sale. Thus, paragraph 33 of the sale order's finding

of facts states that "[t]he claim of RFC is fixed, *for the purposes of this Sale Order*, at $7,500,000" (emphasis added), without prejudicing in any way the adversary proceeding.[3] Likewise, section 2.2(c) of the Asset Purchase Agreement ("APA"), which the sale order incorporates by reference, limits RFC's claim to the lesser of $7.5 million or the amount determined in the adversary proceeding. Section 2.2(c) initially required the debtors to request a final order from the bankruptcy court approving a compromise amount between the unsecured creditors committees and RFC. Yet, once it appeared that the committees and RFC would not settle the adversary proceeding, the debtors and CCCG amended section 2.2(c) expressly to disclaim any prejudice to the adversary proceeding.

These contractual provisions demonstrate that paragraph 25 refers only to RFC's prepetition secured claim, not its post-petition administrative priority claim. Paragraph 25 merely carried out the deal-making compromise between the debtors and CCCG by allowing CCCG to purchase debtors' assets without the risk of an unexpectedly large claim by RFC.

A supplemental order concerning the procedures for the asset sale entered in April 2001 also evidences that paragraph 25 did not strip RFC's post-petition loans of administrative priority status. The order stated that CCCG's assumption of RFC's pre-petition loans "in the approximate amount of $7.5 million . . . shall

---

[3] The sale order contains two sets of sequentially numbered paragraphs. The first set expresses the bankruptcy court's findings of facts, the second set its order. We cite the latter by paragraph number alone and the former by paragraph number and the phrase "findings of fact."

be treated as consideration to the Debtors' estates in the amount of $7.5 million *solely for the purposes of the sale of the Debtors' assets*" (emphasis added). The order also stated that "RFC shall comply with the various debtor-in-possession orders entered in this case." Although not a part of the sale order, this language from the supplemental order demonstrates that the parties and the bankruptcy court believed that the DIP orders, i.e., RFC's obligation to loan to the debtors and its right to administrative priority, remained in effect after the sale order.

The debtors also argue that paragraph 27 of the sale order amends or vacates the DIP orders. Paragraph 27 states, in pertinent part, that "all orders of this court . . . shall be deemed amended and/or vacated to the extent required to permit consummation of the Acquisition. To the extent such other . . . orders are inconsistent with this Order or the [APA], this Order and the [APA] shall in such cases govern." As we have explained, however, paragraph 25 unambiguously covers only RFC's pre-petition claims, not its post-petition administrative priority claims. Thus, the sale order and the DIP orders do not conflict, and paragraph 27 does not amend or vacate the DIP orders.

Finally, we note the improbable nature of the debtors' theory. A claim with administrative priority under § 364(c)(1) is one of the most valuable claims under the Bankruptcy Code; it takes priority over almost every other kind of claim, including administrative claims under § 503(b) and § 507(b). A general unsecured claim, on the other hand, is one of the most worthless claims under the Code; unsecured creditors often receive mere pennies on the dollar, if that.

RFC surely would not have agreed to surrender its administrative priority claim for a general unsecured claim without some very good reason, yet the debtors have singularly failed to adduce any such reason. This failure strongly suggests that RFC did not, in fact, ever surrender its administrative priority claim, but rather lost the claim because of the mistaken interpretation of the bankruptcy court. As the district court explained, however, "[t]he bankruptcy court cannot transform the loans from an administrative expense into an unsecured interest without the lender's consent." The district court properly held that the loans made by RFC under the DIP orders have administrative priority.

The judgment of the district court, reversing the orders of the bankruptcy court, is AFFIRMED.

5